UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **COLEMAN S. BERZETT,** | ] |
| Plaintiff, | ] |
| vs. | ] CV 12-J-2070-NE |
| **MICHAEL J. ASTRUE,** **Commissioner of the Social Security Administration**, | ] ] ] ] |
| Defendant. | |

**MEMORANDUM OPINION**

The plaintiff appeals from the decision of the Commissioner of Social Security denying his application for supplemental security income. The case is now properly before the court. *See* 42 U.S.C. § 405.

At the time of the hearing before the Administrative Law Judge ("ALJ"), the plaintiff was 24 years old, having been born January 26, 1986, and had a GED and a few college classes. (R. 32). Plaintiff alleges he became disabled on August 19, 2008 (R. 34, 134). The ALJ found plaintiff has the severe impairments of bipolar disorder, schizoaffective disorder, and a history of substance abuse (R. 15). The ALJ specifically considered whether the plaintiff met the requirements of Listing 12.04 or 12.09, and found that he did not (*Id.*). The ALJ concluded that the plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, with the moderate limitations in plaintiff's mental residual functional capacity (R.

16). The ALJ specifically found that plaintiff could be expected to be able to understand, remember, and carry out short simple instructions, but would likely have difficulty with more detailed tasks and instructions (*Id.*). Plaintiff could be expected to be able to maintain attention and concentration for 2 hours with all customary rest breaks, and a well spaced work environment would be best for maximum concentration (*Id.*). Plaintiff would likely miss no more than 1 or 2 days per month due to psychological symptoms (*Id.*). Plaintiff's contact with the public should be infrequent and non intensive with tactful, constructive, and non threatening supervision (*Id.*). Changes in plaintiff's workplace should be infrequent and gradually introduced (*Id.*). Based on these limitations and vocational expert testimony, the ALJ determined plaintiff could perform his past relevant work as a warehouse worker, as well as other jobs available in significant numbers in the national economy (R. 20-21, 57-62). The ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act (R. 21).

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: 1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and 2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S. Ct. 1420, 28 L. Ed. 843 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988). The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See*

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983).  However, this limited scope does not render affirmance automatic,

> for "despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

*Lamb*, 847 F.2d at 701.  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir.1984).

The plaintiff argues that the final decision of the Commissioner is deficient because the attorney for the plaintiff wanted the plaintiff's mother to testify as a witness to the impact of the plaintiff's severe medical problems on his ability to engage in substantial gainful work activity and that the ALJ failed to correctly apply the treating physician rule to the facts of this case.  Although the ALJ did not allow the plaintiff's mother to testify, a statement of plaintiff's mother regarding plaintiff's condition was part of the record (R. 151-158).  The court, therefore, finds that plaintiff's mother's statement was presented to the ALJ for consideration and there was no error.

Plaintiff's additional claim of error centers on a statement by Dr. Karis Knight that plaintiff "is not capable of working full-time because work stress would cause physical decompensation, which would exacerbate his fragile mental state" (R. 263).  This statement appears to be made in a letter to plaintiff's attorney on May 4, 2010 (*See id.*).  The weight afforded a physician's opinion on the nature and severity of a

claimant's impairments depends upon the physician's examining and treating relationship with the claimant, the evidence the physician presents to support his opinion, how consistent the opinion is with the record as a whole, the physician's specialty, and other factors. *See* 20 C.F.R. § 416.927(d). Generally, a treating physician's opinion is entitled to more weight, and an ALJ must give good reasons for rejecting it. *See id.* § 416.927(d)(2). However, the opinion of a physician, even a treating physician, may be discounted when not supported by objective medical signs and diagnostic testing or if inconsistent with the record. *See id.* § 416.927(d); *Crawford v. Comm'r*, 363 F.3d 1155, 1159-60 (11th Cir. 2004); *Phillips v. Comm'r*, 357 F.3d 1232, 1240-41 (2004).

In this case treatment notes from Dr. Karis Knight reflect that plaintiff improved shortly after beginning treatment in March 2008 (*See* R. 206-215, 245-262). On July 8, 2008, the month prior to his alleged disability onset, plaintiff reported feeling "alright" (R. 212). He reported that he had down days and did not go out much because he did not have a car, but stated it was a good day and he was having more good days (R. 212-213). On September 16, 2008, plaintiff was "definitely feeling better" (R. 214). He was "watch[ing] TV and stuff" to keep busy, since he had not gotten his driver's license back yet and was not getting out much (R. 214). By December 15, 2008, plaintiff successfully took the driver's license tests, and was driving and getting out more (R. 255). His sleep and mood were noted to be "pretty

good" (R. 255). He stated that he still had thoughts about people watching and talking about him, but he was realizing this was not the case (R. 255).

By February 24, 2009, plaintiff was job hunting (Tr. 255). He was "doing alright" and getting out more (R. 255). He was less nervous; his mood, sleep, and depression had improved; and he denied psychosis (R. 255). While plaintiff reported, on May 21, 2009, not doing much and tiring easily, he was working with vocational rehabilitation to get a job (R. 258). On May 26, 2009, he reported that things were going "great" and his medications were working well (R. 259). Plaintiff's mood was pretty good, and he stayed busy when he could "hang out" with friends (R. 259). On July 20, 2009, his anxiety and paranoia were better, and his sleep was satisfactory (R. 260). Plaintiff continued to job hunt (R. 260). On September 21, 2009, Plaintiff denied having problems with depression, delusions, or hallucinations, and reported that he had a job interview (R. 261). Otherwise, he was "just hanging out mostly" and enjoyed watching football (R. 261). Plaintiff reported having a good holiday season when he was seen again on January 13, 2010 (R. 261). His mood was good, though he was frustrated with the lack of available jobs (R. 261-262). He enjoyed watching football, hanging out with his friends, playing video games, and watching television (R. 262).

As the ALJ concluded, Dr. Knight's treatment records, in contradiction to his May 4, 2010 statement, support a finding that, as of his alleged disability onset date and thereafter, plaintiff did not have disabling limitations (R. 18). *See* 20 C.F.R. §

416.1529(c)(3)(iv); *Harwell v. Heckler*, 735 F. 2d 1292, 1293 (11th Cir. 1984); *see also Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1986) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."). In so finding the ALJ also considered the opinion of consultative examiner Dr. Jon Rogers (R. 19, 221-226). Upon examining plaintiff, psychologist Dr. Rogers noted he was appropriately dressed and groomed, with an alert expression and average motor activity (R. 223). Though plaintiff's mood was anxious, he conversed normally, performed serial 7 calculations, and solved math problems (R. 223). He repeated 5 digits forward and 4 backwards, and Dr. Rogers found his general knowledge adequate (R. 223). Dr. Rogers assessed that Plaintiff's thought processes were normal, and his insight and judgment were fair to poor (R. 223). He found plaintiff's effort, motivation, and cooperation during the evaluation to be marginal, as he was evasive about his substance abuse history and arrest record (R. 223, 225). Plaintiff told Dr. Rogers that treatment has helped him be more stable and that he feels "all right on medications" (R. 221, 223). Dr. Rogers diagnosed plaintiff as having bipolar disorder, mixed (R. 224). He assessed that plaintiff's mental impairment was moderate (R. 225). Dr. Rogers' opinion is substantial evidence supporting the ALJ's RFC finding (R. 16, 221-226). *See* 20 C.F.R. § 416.929(c)(2), (3).

The findings of Dr. Rogers and the ALJ are also supported by plaintiff's daily activities (R. 16-19). *See* 20 C.F.R. § 416.929(c)(3). Although plaintiff's parents pay his bills, he lives independently in a trailer on their property (R. 31-33). He cleans

his home, mows the yard, and goes shopping for groceries and clothes (R. 47, 50, 161, 163-164). He has no problems with personal care and, as reflected in Dr. Knight's treatment records, he drives, watches television and football, and plays video games (Tr. 33, 46, 165, 211, 213-214, 261-262).

Without redeciding the facts or reweighing the evidence, this court can find no basis upon which to reverse the decision of the ALJ. *See e.g.*, *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Accordingly, the decision of the Commissioner of the Social Security Administration will be affirmed by separate order.

Done, this 10th day of January 2013.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE